UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA/ SEATTLE

| | |
|---|---|
| JEFFREY R. ,<br><br>                Plaintiff,<br>   v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 2:24-cv-01457-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 1, Complaint.

## BACKGROUND

Plaintiff filed his applications for Title II and Title XVI benefits on April 10, 2021. AR 21. The claims were denied initially on December 20, 2021, and upon reconsideration on June 2, 2022. *Id.* The date of alleged onset was March 30, 2021, and the date last insured will be December 31, 2025. AR 21-22.

Plaintiff appealed and ALJ Laureen Penn held a hearing on October 4, 2023; the ALJ issued a decision on October 17, 2023 finding the plaintiff not disabled. AR 21-32.

The ALJ found that plaintiff had the following severe impairments: ankylosing spondylitis and sacroiliitis. AR 24. The ALJ found that plaintiff has the residual functional capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry twenty pounds occasionally, ten pounds frequently. He can stand and walk for six hours and can sit for six hours. He can occasionally climb stairs and ramps, balance, stoop, crouch, and kneel but cannot crawl or climb ladders, ropes, or scaffolds. He cannot have concentrated exposure to extreme cold, extreme heat, vibration, and hazards, including unprotected heights and moving machinery. He would miss one day of work per month.

AR 26. Based on hypotheticals posed to the Vocational Expert (VE) at the hearing, the ALJ concluded plaintiff could not perform his past work but could work, instead, as a marker, router, taproom attendant, routing clerk, mail clerk, document preparer, election clerk, call out operator, or telephone quotation clerk. AR 65-68.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason on which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of

the Court's review. *Id.*

Plaintiff argues that the ALJ committed reversible error for the following reasons: 1) the ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting plaintiff's testimony about his symptoms and functional limitations related to his ankylosing spondylitis and sacroiliitis; and 2) the ALJ erred by finding at step five that plaintiff can perform other work. Dkt. 11 at 1.

## DISCUSSION

### I. Plaintiff's Statements About Symptoms and Limitations

Plaintiff argues the ALJ did not provide specific, clear and convincing reasons supported by substantial evidence for rejecting plaintiff's testimony about his symptoms and functional limitations. Dkt. 11 at 3. Plaintiff further argues that the ALJ's decision does not explain what specific portions of plaintiff's testimony lacked credibility and failed to link reasons to specific evidence that undermined plaintiff's testimony. *Id.*

To assess the credibility of a claimant's testimony on subjective symptoms and limitations, the ALJ must engage in a two-step analysis. Social Security Ruling 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms. Where the plaintiff has presented objective medical evidence to meet the first step and there is no affirmative evidence of malingering, the ALJ can only reject plaintiff's testimony by providing specific, clear and convincing reasons supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Plaintiff testified that he can probably lift at most 30 pounds and walk as far as a quarter of a mile before having to stop and rest. AR 329. He stated that he cannot stand, squat, kneel, sit, or bend for long periods of time. *Id.* In a function report he stated, "I struggle to get even the most mundane household tasks accomplished on many days" and that "it is a struggle for me to get up, get moving, and do something as simple as the dishes and regular chores around my home." AR 290, 297.

Plaintiff stated that he prepares simple foods (sandwiches, cereal, fruit) and grocery shops every one to two weeks. AR 355. He tries to sweep the house when he feels up to it, and folds laundry sometimes. *Id.* He stated, "when I do start a task, I go slow so I don't overdo it" and that there are many days he cannot do any tasks because of pain and mobility problems. AR 324.

At the hearing, plaintiff testified he always wakes up with stiffness that takes hours to go away, which affects his ability to do basic things such as dress himself. AR 47. He has to sleep in a recliner to take the pressure off his hips; laying down in a bed is too painful. AR 45-46. He finds it difficult to get up off the couch without his cane or assistance from another person. AR 52. Family and friends help with basic outdoor chores because it is hard for him to go outside every day. AR 53. He uses his cane probably 50% of the time and has fallen. AR 57.

### a. Objective Medical Evidence

The ALJ summarized much of the medical evidence and then stated that while the evidence supports that plaintiff's conditions create exertional, postural, and environmental limitations, these limitations are not as severe as alleged by the plaintiff. AR 27-30. She stated that despite his complaints, "his symptoms generally remained

stable with ongoing conservative treatment, his examiners frequently did not note the use of any assistive devices, and later medical imaging showed no evidence of ankylosis." AR 30. She then concluded that this evidence is consistent with her residual functional capacity determination. *Id.*

Plaintiff argues that this reason fails to be clear and convincing, because the ALJ recites some of the medical evidence in support of her own RFC without specifying what particular portions of plaintiff's actual testimony she is rejecting, and without explaining what specific medical evidence undermined that testimony. Dkt. 11 at 10.

### i. Symptoms Generally Stable with Conservative Treatment

The ALJ reasoned that plaintiff's limitations were not as severe as he alleged because his symptoms generally remained stable with ongoing conservative treatment. AR 30. Throughout her summary of the medical evidence, the ALJ discussed some, but not all, of the treatments and medications plaintiff has tried. AR 27-30. She pointed out osteopathic manipulation, methotrexate,[1] oral steroids, physical therapy, chiropractic manipulation, suboxone, and opioid pain killers, but failed to mention that plaintiff has also tried anti-inflammatories, lidocaine patches, sacroiliac joint steroid injections, muscle relaxers, Humira, and sulfasalazine. AR 27-30, 437-438, 500-503, 516, 596, 664-665, 689-690, 802-09, 844. Notwithstanding the other thirteen treatments that plaintiff has tried, pain treatment with opioids is generally not considered conservative. *See, e.g., Carissa F. v. Kijakazi,* 2023 WL 6299830, at *6 (E.D. Wash. Sept. 27, 2023) (citing *O'Connor v. Berryhill,* 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019) ("pain

---

[1] The defendant asserts that plaintiff did not adhere to the prescribed methotrexate treatment, but the Court will not consider this argument, since the ALJ only mentioned that in 2022 "he admitted to no longer taking his methotrexate" but did not discuss this as a reason to discount plaintiff's statements.

5

treatment with opioid analgesics generally is not considered conservative")); *Kager v. Astrue*, 256 F. App'x. 919, 923 (9th Cir. 2007) (rejecting ALJ's determination that claimant had not had "significant pain therapy consistent with her alleged limitations" when the claimant was treated with narcotic analgesics).

Plaintiff's treatment with Vicodin alone renders his treatment more than conservative. Plaintiff takes Suboxone because of addiction issues, but his treatment providers still put him on other opioids when necessary. See AR 705-762 (notes dated December 2020-February 2022, of ARNP Corlene Eberle and Dr. Kirk Brownell, MD, concerning plaintiff's treatment for opioid dependency), AR 821 (notes of Dr. Escobar, dated 3-11-2022, documenting Suboxone treatment), AR 827-832 (notes of Dr. Campbell, dated 8-3-2023, discussing ongoing Suboxone treatment for chronic opioid dependency and stating plaintiff has been on Suboxone for three years), AR 838, 844, 847 (notes dated 12-30-2022, 2-7-2023, and 5-2-2023 from Dr. Campbell, stating that plaintiff was receiving oxycodone for breakthrough pain). The ALJ's finding that plaintiff's treatment was conservative is not supported by substantial evidence in the record.

The ALJ also considered that plaintiff's symptoms remained stable with his treatment. AR 30. Many courts in this circuit have held the fact that a plaintiff's condition is stable does not, without more, indicate that a plaintiff's condition is not disabling. *See, e.g.*, *Gomez v. Kijakazi,* 2023 WL 6811993, at *7 (E.D. Cal. Oct. 16, 2023); *Kluthe v. Berryhill*, 2018 WL 775298, at *9 (E.D. Cal. Feb. 8, 2018) (finding ALJ erroneously equated finding that plaintiff's condition was stable with his ability to perform activities). "The fact that plaintiff was stable does not mean that he was not still experiencing great

pain." *Williams v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4478402, at *2 (D. Ariz. Sept. 30, 2021) (quoting *Englehardt v. Astrue*, 2012 WL 12878758, at *7 (D. Ariz. Mar. 21, 2021)) (internal quotation marks omitted).

Further, the finding that plaintiff's symptoms have been stable is not supported by substantial evidence. The record clearly demonstrates that plaintiff's conditions are characterized by ongoing chronic pain with recurring episodes of acute exacerbation of pain. AR 468-69, 497, 523, 620, 780, 838, 844, 859. Additionally, MRIs between 2019 and 2023 have shown gradual erosive changes to plaintiff's iliac bones and frequent edema surrounding the sacroiliac joints. AR 433, 451, 596, 842.

Such acute symptom flares and progressive worsening on medical imaging contradict a descriptor of stable. The record as a whole reflects that plaintiff's complaints of pain are persistent, and occasional periods of improvement or stability do not necessarily mean that symptoms were no longer disabling or that he could function in the workplace. *See, e.g.*, *Michelle P. v. Commissioner of Social Security*, 2024 WL 3934792, at *2 (W.D. Wash. Aug. 26, 2024); *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001). The finding that plaintiff's symptoms were stable is therefore not supported by substantial evidence in the record.

### ii. Use of Assistive Devices

Throughout the medical evidence summary, the ALJ repeats that examiners did not frequently note that plaintiff used an assistive device. AR 27-30. The record contains some mention of plaintiff's use of a cane, such as during his psychological evaluation and at visit to the emergency room. AR 609, 847 (notes by Dr. Campbell, dated 12-30-2022, "Patient has a walker, hospital bed and a cane"), 863 (during emergency room

evaluation on 12-13-2022, notes indicate plaintiff was "able to stand and bear weight with a cane"). At the hearing, plaintiff testified that he uses his cane about 50% of the time. AR 57. When asked, plaintiff informed the ALJ that his cane and other assistive devices were not prescribed by a doctor. AR 58.

In a function report dated October 8, 2021, he reported that he often uses his cane when in pain and having a flare up. AR 325. In a second function report dated March 8, 2022, he reported using crutches when his pain flares up so badly that he can't put any weight on his hip. AR 354. He notes that these were prescribed several years ago after a car accident. *Id*. During his psychological evaluation he used his cane and noted that he used it occasionally on uneven surfaces. AR 609. He also states that his hip will give out some days as he is walking so he intermittently uses a cane to keep himself upright. AR 284-85 (Disability Report – Adult – Form S.S.A.-3368). His use of a cane was also noted by his primary care physician at an office visit on 12/30/2022. AR 847.

An ALJ may rely on "ordinary techniques of credibility evaluation," including "inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Tommasetti v. Astrue*, 33 F.3d 1035, 1039 (9th Cir. 2008); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The unprescribed and unwarranted use of assistive devices is a valid consideration in an ALJ's credibility analysis. *Chaudry v. Astrue,* 688 F.3d 661, 672 (9th Cir. 2012) (plaintiff's continued use of a cane against his physicians' recommendations demonstrated failure to follow the advice of providers which itself undermined plaintiff's credibility).

Here, plaintiff has consistently testified that he uses his cane only intermittently, mostly when experiencing increased pain or a flare up of his conditions. He has not been advised by any of his physicians to stop using his cane.

As he does not use his cane 100% of the time, it is logical that its use would not be noted at all doctors' appointments. As plaintiff has consistently represented his cane use as intermittent and there is at least some medical evidence supporting his need for a cane, the Court does not find this a sufficiently clear or convincing reason supporting the credibility determination. *See Nicole L. v. Comm'r of Soc. Sec.*, 2019 WL 1407416, at *7 (D. Or. March 28, 2019) (ALJ's consideration of plaintiff's infrequent, unprescribed use of cane was not supported by substantial evidence where plaintiff did not claim that it was prescribed and only used it "when her conditions are acting up"); *see also Saunders v. Astrue,* 433 Fed. App'x 531, 534 (9th Cir. 2011) ("Whether prescribed by a doctor or not, Saunders did suffer from a "serious" impairment, and his use of these devices is not clear and convincing evidence to find him not credible").

### iii.  Lack of Ankylosis on Medical Imaging

The ALJ also argues that the lack of ankylosis in later medical imaging conflicts with plaintiff's statements related to the severity of his pain and limitations. The plaintiff has received several magnetic resonance imaging tests (MRIs) since 2018. AR 433, 451, 596, and 842. The most recent MRI occurred on March 16, 2023, and the physician's comments noted, "active sacroiliitis with erosion involving left iliac bone progressed since 2021 study. Mild right sacroiliitis with very subtle erosion involving right iliac bone improved since previous study"; and "No evidence of ankylosis. AR 841-842.

The ALJ does not discuss ankylosis, how the lack of it is relevant, or how the lack of it contradicts any of plaintiff's testimony. *See generally, Bowers v. Kijakazi,* 40 F.4th 872, 873 n. 2 (8th Cir. 2022) (explaining that ankylosing spondylitis is an inflammatory disease that over time can cause fusion of bones in the spine). The Ninth Circuit has repeatedly held that an ALJ "cannot rely on an absence of positive medical evidence to discredit a claimant's subjective symptom testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1201 (9th Cir. 2024). That said, the lack of objective medical evidence may still be considered in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). An MRI showing no evidence of ankylosis, at best, provides a reason to discount testimony about symptoms or limitations related to ankylosis. The ALJ did not discuss how the absence of ankylosis on an MRI conflict with plaintiff's testimony about the severity and limiting effects of his pain. The absence of ankylosis was therefore not a clear and convincing reason to discount plaintiff's testimony.

### b. Activities of Daily Living

Plaintiff argues that the activities of daily living cited by the ALJ do not undermine his testimony because he did not spend a substantial part of his day engaged in pursuits involving functions transferable to a work setting and those activities do not contradict his testimony. Dkt. 11 at 5-6. He further argues that the ALJ disregarded the limitations he has in his ability to perform those activities.

The Ninth Circuit has repeatedly stated that "claimants should not be penalized for attempting to lead normal lives in the face of their limitations," and that "one does not need to be 'utterly incapacitated' in order to be disabled." *Cooper v. Bowen*, 815 F.2d

557, 561 (9th Cir. 1987); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). That said, activities of daily living may support an ALJ's decision to discount a Plaintiff's symptom testimony if they contradict previous testimony or show that the plaintiff can spend a "substantial part of [his] day" performing activities that "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ stated, "the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms are inconsistent." AR 27. She noted that while plaintiff had trouble bending down to dress himself, he was able to his personal needs and grooming without assistance or special reminders. *Id.* She also cited that plaintiff could prepare simple meals, sweep, fold laundry, mow the lawn with a riding mower, drive, shop in stores, socialize with others, and care for his pets. *Id.* The ALJ did not explain how, in her view, plaintiff's testimony about those daily activities is inconsistent with his testimony about his pain and functional limitations. An ALJ may discount a claimant's testimony based on daily activities that contradict their testimony, but here, there is no "reasonable inference that such an inconsistency exists." *Ferguson,* 95 F.4th at 1203. The ALJ therefore erred by discounting plaintiff's testimony based on contradiction with daily activities.

An ALJ may also discount a plaintiff's testimony based on daily activities that meet the threshold for transferable work skills. *Orn,* 495 F.3d at 639. The ALJ "must make specific findings relating to [the daily] activities and their transferability [to a work setting] to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

1       The ALJ did not make any specific findings as to which of plaintiff's activities
2 would be transferable to a work setting. Activities such as light household chores, meal
3 preparation, and grocery shopping do not necessarily translate to the work environment.
4 *See, e.g., Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Reddick v. Chater*,
5 157 F.3d 715, 723 n. 1 (9th Cir. 1998). Further, a claimant's activities of daily living that
6 require flexibility regarding rest periods or assistance from other persons are generally
7 not transferable to a work environment. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir.
8 2014).

9       In discussing plaintiff's activities, the ALJ failed to note that plaintiff only sweeps
10 or folds laundry when he's "feeling up to it" and doesn't "hurt too bad," or that he stated
11 that he sometimes needed to take breaks while completing these simple tasks. AR 350.
12 The ability to complete simple chores on an inconsistent basis while taking breaks when
13 needed is not compatible with work that requires a consistent schedule of 8 hours per
14 day, 5 days per week. "A man who cannot walk, stand or sit for over one hour without
15 pain does not have the capacity to do most jobs available in the national economy."
16 *Delgado v. Heckler*, 722 F.2d 570, 574 (9th Cir. 1983). Accordingly, the Court concludes
17 that substantial evidence does not support the ALJ's determination to discredit plaintiff's
18 pain testimony on the basis of his daily activities.

19       The ALJ erred when she failed to provide legally sufficient reasons supported by
20 substantial evidence for rejecting plaintiff's subjective testimony. This error was harmful.
21 An error that is inconsequential to the non-disability determination is harmless. *Stout v.*
22 *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ
23 result in a residual functional capacity (RFC) that does not include relevant work-related

limitations, the RFC is deficient, and the error is not harmless. *Id; see also, Carmickle v. Comm'r Soc. Sec. Admin*., 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988). The ALJ's error here was consequential because she may have included additional limitations in the RFC assessment and hypotheticals to the vocational expert if she had properly evaluated plaintiff's testimony. The ALJ thus harmfully erred in rejecting plaintiff's testimony regarding the severity of his symptoms.

II.     **The ALJ's Step Five Finding**

Plaintiff argues the ALJ erred by finding at step five that plaintiff can perform other work. Dkt. 11 at 1. Specifically, plaintiff argues that the hypothetical posed to the Vocational Expert (VE) was flawed because it did not fairly and accurately describe all of plaintiff's limitations. Dkt. 11 at 18-19. Plaintiff therefore contends that the testimony of the VE is not substantial, competent evidence, and the ALJ erred by relying on this testimony to find that plaintiff could perform other work. *Id.* This argument is derivative of plaintiff's other arguments. Because the Court has found the ALJ erred by failing to provide clear and convincing reasons to reject plaintiff's symptom testimony, plaintiff's argument succeeds. *See Lingenfelter,* 504 F.3d at 1040-41 (holding ALJ's RFC assessment and step five determination were not supported by substantial evidence where RFC and hypotheticals to vocational expert failed to include all of the claimant's impairments).

III.    **Whether the Court should reverse with a direction to award benefits.**

Plaintiff requests that the final decision of the Commissioner be vacated, his testimony be credited, and he be found disabled; or, in the alternative, that the case be remanded for a new hearing with reconsideration of his severe impairments and

reconsideration of subsequent steps of the disability evaluation, including Vocational Expert testimony at step five if a favorable determination is not made prior to that point. Dkt. 11, at 1.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where:

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison,* 759 F.3d at 1020). Even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

"[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1106 (9th Cir. 2014). The Court, instead, must first "assess whether there are

14

outstanding issues requiring resolution before considering whether to hold that the claimant's testimony is credible as a matter of law." *Id.* at 1105. Only if there are no outstanding issues can the Court determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts. Therefore, this matter should be remanded for further administrative proceedings, including a de novo hearing, not with a direction to award benefits. *See Leon,* 80 F.3d at 1045.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. The ALJ shall reevaluate plaintiff's subjective complaints, reassess plaintiff's RFC, and proceed with the rest of the sequential evaluation process. The ALJ may allow plaintiff to provide additional testimony and evidence, as necessary to clarify the record.

Dated this 14th day of April, 2025.

Theresa L. Fricke
United States Magistrate Judge